IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SEAN PARSONS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 3:20-ccv-1682-K |
| V. | § | |
| | § | |
| LIBERTY INSURANCE | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Defendant Liberty Insurance Corporation has filed a Motion for Summary Judgment on all claims brought by Plaintiff Sean Parsons, *see* Dkt. No. 23, while Parsons has cross-filed a Motion for Partial Summary Judgment on the issue of Liberty's alleged violations of the Texas Prompt Payment of Claims Act ("TPPCA"), *see* Dkt. No. 48, both of which United States District Judge Ed Kinkeade has referred to the undersigned magistrate judge for hearing if necessary and determination, *see* Dkt. Nos. 44 & 51.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant in part and deny in part Liberty's motion for summary judgment [Dkt. No. 23] and grant in part and deny in part Parsons's partial motion for summary judgment [Dkt. No. 48].

**Background**

This case arises out of an insurance claim that Parsons filed with his insurance company, Liberty, for hail and wind damage sustained during a storm that hit the

-1-

Dallas area on June 9, 2019. *See* Dkt. No. 1, Ex. D-1. Parsons notified Liberty of the loss on June 11, 2019, and, on June 14, 2019, Liberty dispatched a claims adjuster to inspect Parsons's property. *See id.*

After discovering damage to the exterior of the property, Liberty issued an initial damage estimate for $23,037.37 (RCV)/$19,244.41 (ACV), along with a payment letter explaining how Liberty had calculated Parsons's coverage under his insurance policy. *See* Dkt. No. 25, Ex. A-2. Parsons disputed Liberty's estimate and submitted an estimate from his contractor for $71,974.11. *See* Dkt. No. 35, Ex. A.

Liberty then reinspected the property and issued a revised estimate and payment on July 8, 2019, which Parsons again contested. *See* Dkt. No. 25, Ex. A-3. This occurred twice more, with Liberty reinspecting the property and issuing increased estimates and payment letters on August 31, 2019 and September 17, 2019, respectively. *See* Dkt. No. 25, Exs. A-4 & A-5.

After failing to reach an agreement on the value of Parsons's insurance claim, Liberty, on May 18, 2020, invoked the policy's appraisal provision, and Parsons filed suit against Liberty in the County Court at Law No. 2 of Dallas County, Texas, bringing claims for (1) breach of contract; (2) unfair or deceptive trade practices; (3) breach of the common law duty of good faith and fair dealing; (4) breach of express and implied warranty; (5) insurance fraud; and (6) violations of the Texas Prompt Payment of Claims Act. *See* Dkt. No. 1, Ex. A-1.

Liberty then properly removed the case to federal court on the basis of diversity of citizenship. *See* Dkt. No. 1.

-2-

In November 2020, Judge Kinkeade issued an order abating the case pending the completion of the appraisal process. *See* Dkt. No. 19. After receiving appraisals from both Liberty's and Parsons's respective appraisers, the umpire issued and signed the final appraisal award on April 2, 2021, valuing Parsons's claim at $60,644.42.

Liberty then issued checks to Parsons for $23,440.21 and $4,992.71 for what Liberty alleges is the remaining balance on the appraisal award and all potential interest owed on Parsons's claim, and promptly moved for summary judgment on Parsons's claims. Parsons rejected the payments on the basis that they were untimely and do not constitute the amount that Liberty owes and filed his cross-motion for summary judgment seeking damages for Liberty's failure to promptly pay his claim.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of

a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact" Fed. R. Civ. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and

designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his or their] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote

omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a

finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. Nations Credit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

"When parties file cross-motions for summary judgment, [the Court] review[s] each party s motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party" *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013) (footnote and internal quotation marks omitted).

## Analysis

The Court first addresses Parsons's evidentiary objections before turning to consideration of Liberty's Motion for Summary Judgment on all claims and Parsons's Partial Motion for Summary Judgment on the TPPCA claims.

I.    **Parsons's Objections to Liberty's Summary Judgment Evidence**

As an initial matter, Parsons objects to two declarations that Liberty submitted in support of its motion on the ground that they are not competent summary judgment evidence. Specifically, Parsons objects to paragraphs 5-10 of Michael Raney's unsworn declaration and paragraphs 5 and 7 of Colin Batchelor's affidavit, arguing that they are conclusory and offer no underlying facts to support subjective beliefs that they include.

An "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). "Personal knowledge" means that the declarant or affiant "must have had an opportunity to observe, and must have actually observed the fact." FED. R. EVID. 602. A statement is not within a declarant's personal knowledge if the statement is based merely on information and belief. *See de la O v. Housing Auth. of El Paso*, 417 F.3d 495, 502 (5th Cir. 2005).

Michael Raney's declaration meets Rule 56(c)(4)'s requirements. Although not formally required, Raney attests in his declaration that his statements are made from personal knowledge. The statements contained in paragraphs 5-10 – which recount when, where, and how Parsons reported his insurance claim to Liberty, Liberty's investigation of Parsons's claim, and the months of back-and-forth communication between Liberty, Parsons, and Parsons's contractor as the parties attempted to resolve the dispute over the loss estimate – are rationally based on Raney's

perceptions as the Liberty Field Claims Resolution specialist assigned to Parsons's claim. Additional evidence supporting Raney's involvement in Parsons's claim and his statements regarding communications exchanged between, and payments made to, Parsons during the claim negotiation process are found in the payment letters attached to the declaration, two of which are signed by Raney and list him as the Estimator on Parsons's claim.

Raney's declaration provides adequate factual support that it is based on Raney's personal knowledge, and, to the extent that his statements asserting payments were issued to Parsons are factual conclusions, they are supported by the payment letters attached to the declaration.

Parsons's objections to paragraphs 5 and 7 of Colin Batchelor's affidavit similarly fail. Parsons argues that "Batchelor concludes, absent any evidence, that $23,440.21 was the sum owed after subtracting the deductible and prior payments" and that "$4,992.71 is payment of all potential interest owed." In paragraph 5, Batchelor states that the appraisal award amount was $60,644.24 (RCV)/ $54,555.88 (ACV) and that, after subtracting the deductible and prior payments, Liberty issued a check to Parsons for $23,440.21. In paragraph 7, Batchelor states that he sent a letter to Parsons's attorney confirming payment of all potential interest owed on the appraisal award and enclosing a check for $4,992.71.

These statements are made from Batchelor's personal knowledge as Liberty's attorney handling the Parsons's claim matter. Attached copies of the appraisal

award, the issued checks, and the accompanying letters to and from Batchelor in connection with the appraisal award support these factual assertions.

Batchelor's statements are not legal conclusions as to the sufficiency of Liberty's post-appraisal payments; at most, Batchelor's statement in paragraph 7 can be read as communicating Liberty's belief that the $4,992.71 payment represented all potential interest due on the appraisal award.

The objected-to paragraphs in Raney's and Batchelor's respective declaration and affidavit are competent summary judgment evidence that the Court should consider in resolving the parties' motions.

## II.    Liberty's Acceptance of Parsons's Claim

Parsons alleges multiple times that Liberty improperly denied his insurance claim or failed to provide Parsons a reasonable explanation for its denial within the contractually and statutorily required timeframe.

As a preliminary matter, the undersigned finds that Liberty did not reject or deny Parsons's insurance claim.

Denial of an insurance claim occurs where "the insurer has received all requested information from the claimant, conducted an investigation, evaluated the claim, and concluded that it is not liable under the policy." *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 815 (Tex. 2019). Conversely, an insurance claim is accepted if the insurer determines the insured is entitled to benefits under the policy and makes payments in line with that determination of liability. *See id*. at 816. This is so even if there is a dispute regarding the true value of the claim that is later

resolved through the appraisal process. *See Crenshaw v. State Farm Lloyds*, 425 F. Supp. 3d 729, 738 (N.D. Tex. 2019) (finding that insurer accepted a claim where it investigated and made payment based on its initial valuation of the loss, then paid the increased loss amount as determined by the appraisal process).

Parsons does not allege, and has not submitted evidence showing, that Liberty ever communicated to him that his claim was not covered by his insurance policy. Liberty's evidence shows that, after receiving notice of Parsons's claim on June 11, 2019, it investigated the damage and issued an initial payment of $13,313.07 on June 14, 2019, well within the 15- to 45-day guarantee promised in the policy.

For the purposes of the parties' cross-motions for summary judgment, Liberty accepted Parsons's claim.

## III.    Liberty's Summary Judgment Motion

Liberty moves for summary judgment on Parsons's claims on the grounds that it has tendered all amounts due on the appraisal award and has thus fulfilled all its obligations under the policy, estopping Parsons's breach of contract claim. Liberty further argues that, because Parsons cannot establish breach and has suffered no independent injury, his extra-contractual claims fail as a matter of law.

### A.    Breach of Contract

Liberty argues that it is entitled to summary judgment on Parsons's breach of contract claim because (1) Liberty's full payment of the appraisal award estops Parsons's claim or, alternatively, (2) Parsons has failed to show breach or damages.

To estop a breach of insurance claim, the defendant must show (1) the existence of an enforceable appraisal award; (2) timely payment of the award by the insurer; and (3) acceptance of the appraisal award. *See United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F. Supp. 3d 584, 598 (S.D. Tex.), *aff'd*, 624 F. App'x 225 (5th Cir. 2015) (internal citations omitted); *Blum's Furniture Co. v. Certain Underwriters at Lloyd's London*, 459 F. App'x 366, 368 (5th Cir. 2012) ("Under Texas law, when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is estopped by the appraisal award from maintaining a breach of contract claim against the insurer.").

Here, neither party contests the validity of the appraisal award, which the undisputed evidence shows was made pursuant to the terms of the insurance agreement and signed by both parties' appointed appraisers and by the umpire.

But Parsons argues that there is a material dispute as to Liberty's timely payment of the full appraisal award and Parsons's acceptance of the award. The Court now turns to these issues.

### 1. No Genuine Dispute of Fact as to Liberty's Payment of Claim

Parsons contends that Liberty has not established that it fully paid his insurance claim. Specifically, Parsons argues that, as to the pre-appraisal payments, all Liberty has offered are letters to Parsons referencing future payments, rather than actual proof of payments in the form of bank statements or checks. Parsons contends that, because Liberty has not provided evidence of these payments, Liberty

has also not shown that its post-appraisal payment is equal to the remaining balance due to Parsons on the appraisal award.

Liberty included in its exhibits letters dated June 14, 2019, July 8, 2019, August 31, 2019, and September 17, 2019, each of which includes a section, entitled "How Your Payment Was Calculated," that details payment calculations for Parsons's claim and lists a total "Amount paid to [Parsons]." These line items list, respectively, payments for $13,313.07, $8,019.66, $1,483.34, and $2,603.85 paid to Parsons on the dates the letters were sent. And Michael Raney, the Liberty Field Claims Resolution Specialist assigned to the Parsons claim, confirms in his declaration that Liberty issued payments in these amounts to Parsons along with the letters. While neither bank statements nor copies of checks are included in Liberty's appendix, the letters and Raney's declaration are nonetheless evidence that Liberty made pre-appraisal payments between June 14 and September 17, 2019 totaling $25,419.92.

With respect to the post-appraisal award payment of $23,440.21, Parsons does not dispute that he received a check from Liberty for the ostensible balance of the appraisal award; instead, he alleges that Liberty has failed to establish that the tendered amount constitutes the entirety of the balance owed. Liberty attached a copy of a check issued to Parsons for $23,440.21, along with a letter to Parsons's attorney detailing a breakdown of how the payment amount was reached. Specifically, the breakdown calculates the payment as the value of Parsons's claim as determined in the appraisal award ($60,644.42), less recoverable depreciation of $6,088.84, less the

-13-

policy deductible of $5,252.00 and pre-appraisal payments of $25,419.92 (dwelling) and $443.35 (other structures) for a remaining total of $23,440.21.

Because Liberty presented evidence that it has tendered full payment of the appraisal award through a combination of pre- and post-appraisal payments, the burden shifts to Parsons to "designate specific facts showing that there is a genuine issue for trial." *Little*, 37 F.3d at 1075. This burden is not satisfied with unsubstantiated assertions or with some metaphysical doubt as to material facts. *See id.* Instead, disputed facts are resolved in favor of the nonmoving party only when there is an actual controversy, and that occurs when the nonmovant has submitted evidence of contrary facts. *See id.*

While Parsons attacks the sufficiency of the payment letters as evidence of the pre-appraisal payments, he has not offered any contrary allegation or evidence disputing that Liberty made the payments or alleging that he never received them.

Likewise, Parsons argues that Liberty has not established that its payment of $23,440.21 constitutes the remaining balance owed on the appraisal award but fails to offer contrary evidence disputing the amount paid or the calculations that Liberty used to reach that amount, all of which were laid out in Liberty's letter accompanying the post-appraisal check that it issued to Parsons.

There is no genuine dispute of fact regarding Liberty's full payment of the appraisal award.

## 2. No Genuine Dispute of Fact as to Liberty's Timely Payment

Parsons further contends that, even if Liberty did make full payment of the award, it did not do so timely. Parsons's insurance contract required Liberty to adhere to the following timeline to process Parsons's claim: (1) within 15 days of notification of the loss, acknowledge receipt, begin investigating, and specify additional information needed regarding the claim; (2) within 15 business days of receiving any requested information, notify Parsons in writing whether the claim would be paid, denied, or whether additional information is needed; (3) within 45 days of requesting more time (if more time is requested), approve payment of the claim or deny and provide the reason for denial of the claim; and (4) for accepted claims, pay within 5 business days of notifying Parsons that his claim or part of his claim would be paid.

In support of its claim that it timely made all payments under the contract, Liberty attaches payment letters showing that it issued the initial payment on Parsons's claim on June 14, 2019, five days after the storm damage occurred, three days after Parsons first reported the damage, and the same day that Liberty inspected the property and developed its estimate of the loss amount. As discussed above, this letter is evidence that Liberty accepted and paid the initial valuation of the claim within the 15 business days promised under the policy; and nowhere does Parsons specifically allege that he did not receive the initial payment or offer contrary evidence disputing that it was made. And, Liberty attaches copies of the signed appraisal award dated April 2, 2021; a check for $23,440.21 issued April 6, 2021; and shipping confirmation information showing the check and payment letter explaining the amount were mailed on April 12, 2021 and delivered on April 13, 2021.

Parsons argues that the post-appraisal award payment was untimely, contending that the deadline for Liberty to pay was April 12, 2021, or "5 business days from the award," and that Parson did not receive Liberty's appraisal payment until April 13, 2021. But Parsons does not indicate where in his insurance contract Liberty promised to pay the appraisal award within 5 business days of the award being finalized.

The sole support Parsons provides is a citation to an unreported case, *Church v. Church Mut. Ins.*, in which the court denied the defendant-insurer summary judgment on plaintiff's breach of contract claim in part because the evidence showed that the insurer had failed to pay the balance of the appraisal award within 5 business days. 2013 WL 497879 (N.D. Tex. 2013). But, in that case, the insurance contract's Loss Payment provision specifically provided that the insurer would "pay for covered loss or damage within five (5) business days after: ... b. An appraisal award has been made." *Id.* at *8. But, here, the Loss Payment provision in Parsons's policy makes no mention of the timeline for making payment after an appraisal award and merely provides:

> If we notify you that we will pay your claim, or part of your claim, we must pay within 5 "business days" after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 "business days" after the date you perform the act.

Where, as here, an insurance contract does not specify a separate deadline for making appraisal award payments, Texas courts apply the general loss payment provision. *See Crenshaw*, 425 F.Supp.3d at 736-38 (loss payment provision

-16-

unambiguously required payment post-appraisal within five days of providing notice to insured that it would pay appraisal award); *Kezar v. State Farm Lloyds*, No. 1:17-CV-389 2018 WL 6027115 (W.D. Tex. 2017) ("[P]ayment simultaneous with notification complies with materially similar loss payments); *Alvarez v. Lloyds*, No. 7:13-CV-182, 2013 WL 12100997, at *4 (S.D. Tex. Nov. 8, 2013) ("[I]t is undisputed that [the insured] received notice that Allstate would pay the appraisal award by way of Allstate actually providing the payment; there is no fact issue about the difference in timing because the two events occurred simultaneously."); *Carroll v. State Farm Lloyds*, No. CV H-16-1626, 2017 WL 2999681, at *2 (S.D. Tex. 2017) ("It is undisputed that [insurer] notified Plaintiff on February 17, 2017, that it would pay the appraisal award. At that same time, [insurer] sent payment of the award. As a result, State Farm's payment of the appraisal award, tendered contemporaneously with its notice that it would pay the award, was timely under the Policy.").

Here, it is undisputed that the umpire signed the appraisal award on April 2, 2021. Liberty issued a check on April 6 for the cash value of the appraisal award, less deductible and prior payments, and mailed the check along with a letter notifying Parsons of its intent to pay the appraisal award on April 12, 2021. Parsons's attorney received the check one day later on April 13, 2021. Thus, under the Loss Payment provision of the contract, which requires payment within 5 business days of the insurer notifying the insured that it will pay the claim, Liberty's payment of the appraisal award balance was timely.

### 3.  No Genuine Dispute as to Parsons's Acceptance of Appraisal Award

Finally, Parsons contends that Liberty fails to establish its estoppel defense because it cannot show that he accepted payment of the appraisal award.

But Parsons conflates acceptance of the appraisal award with acceptance of payment. A plaintiff "cannot defeat an otherwise valid and binding appraisal award simply by rejecting [] payment of the award" – that is, by refusing to cash the check. *Garcia v. Lloyds*, 514 S.W.3d 257, 272 (Tex. App. – San Antonio 2016, pet. denied); *Devonshire Real Estate & Asset Mgmt., LP v. American Ins. Co.*, 3:12-cv-2199-B, 2014 WL 4796967, *18 (N.D. Tex. Sept. 26, 2014) ("[S]o long as there is a binding and enforceable appraisal award and the insurer timely and full[ly] pays the resulting award, estoppel should apply regardless of whether the insured actually accepts payment.").

The purpose of the appraisal clause in a property insurance policy is to provide a binding, extra-judicial process to settle disagreements about the amount of loss. *See United Neurology*, 101 F. Supp. 3d at 595. To reject an appraisal award issued according to the parties' contractually agreed upon process, the plaintiff must show the award was "(1) made without authority, (2) the result of fraud, accident, or mistake, or (3) not in substantial compliance with the insurance policy." *Meisenheimer v. Safeco Ins. Co. of Indiana*, No. 3:17-cv-2153-M, 2018 WL 3869573, at *2 (N.D. Tex. Aug. 15, 2018). Absent such a showing, where the insurer makes full and timely payment of an appraisal award, "estoppel [] appl[ies] regardless of whether the insured actually accepts payment." *Nat'l Sec. Fire & Cas. Co. v. Hurst*,

523 S.W.3d 840, 845 (Tex. App. – Hous. [14th Dist.] 2017, pet. denied) (quoting *Devonshire*, 2014 WL 4796967, at *18).

In support of the claim that he has not accepted the award, Parsons submits a letter sent from his attorney to Liberty refusing Liberty's "untimely payment in the amount of $23,440.21." But Parsons makes no allegation or showing that the appraisal award has any of the defects laid out above or that his rejection of Liberty's payment was because of an objection to the appraisal award.

Instead, Parsons bases his rejection on the fact that (1) the payment deadline had lapsed, (2) Liberty failed to explain why the check was not for the full appraisal amount of $60,644.42, (3) Liberty failed to pay the full penalty interest owed under the TPPCA, and (4) Liberty further breached the insurance contract by delaying payment of the claim causing Parsons to lose $6,088.84 in replacement cost benefits. These objections do not address any relevant grounds on which to set aside the appraisal award and cannot serve as evidence to defeat Liberty's estoppel defense.

Because there are no genuine disputes of fact regarding Liberty's full and timely payment of Parsons's insurance claim or Parsons's acceptance of the appraisal award, Parsons's claim is estopped, and the Court should grant Liberty's motion for summary judgment.

### B. Extra-Contractual Claims

Liberty also seeks summary judgment on Parsons's extra-contractual claims for unfair or deceptive trade practices, breach of the common law duty of good faith and fair dealing, breach of express and implied warranty, and insurance fraud

(broadly grouped together as extra-contractual "bad faith" claims); and violations of the Texas Prompt Payment of Claims Act, arguing that, because Liberty timely paid the appraisal award, these claims are barred.

### 1. Bad Faith Claims

Under Texas law, full and timely payment of an appraisal award precludes not only breach of contract claims but also extra-contractual claims. *See Jimenez v. Liberty Ins. Corp.*, No. CV H-16-1866, 2017 WL 6368663, at *5 (S.D. Tex. Nov. 9, 2017) (internal citations omitted). An exception exists only where a statutory violation or bad faith practice is "so extreme" that it causes an injury that is independent from the loss of benefits. *Id.* In other words, "[f]or an extra-contractual claim to proceed, the independent injury must be one that does not flow or stem from the denial of policy benefits." *Id.*; *accord USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018). The Texas Supreme Court clarified in *Mendacha* that a successful independent injury claim of this type would be "rare," noting that, "in fact we have yet to encounter one." *Id.*

Parsons alleges numerous extra-contractual claims related to Liberty's processing of his insurance claim, including unfair or deceptive trade practices, breach of common law duty of good faith and fair dealing, breach of express and implied warranty, and insurance fraud. Specifically, he contends that Liberty "misrepresented ... the cause and extent of damage to [Parsons's] property," made false claims as to what costs were covered under Parsons's policy, intentionally

"undervalu[ed] the cost to repair the undisputed damaged property," and unreasonably delayed payment of the claim.

But the only independent injury Parsons alleges is that Liberty's delays cost him the ability to recoup "$6,088.84 in replacement cost benefits he was otherwise entitled to receive under the policy."

Determining whether Liberty's pre-appraisal activities were "extreme" enough to satisfy the independent injury claim standard contemplated by the Texas Supreme Court is unnecessary, because the evidence does not support Parsons's contention that Liberty's conduct has in fact caused his replacement cost benefits to expire. The payment letter issued to Parsons on April 12, 2021 with the appraisal check specifically notes that Parsons "has 365 days from the date of this payment to submit proof of repairs and/or replacement in order to receive recoverable depreciation." The undisputed evidence thus shows that the $6,088.84 in replacement cost benefits is not lost and remains available to Parsons until April of 2022, so long as he submits those repairs to Liberty.

Because this is the only independent injury that Parsons has alleged, and there is no evidence that an injury exists, the Court should grant Liberty's motion for summary judgment on Parsons's extra-contractual claims alleging unfair or deceptive trade practices, breach of common law duty of good faith and fair dealing, breach of express and implied warranty, and insurance fraud.

## 2. Prompt Payment of Claims Act

### a. Liability

Finally, Liberty moves for summary judgment on the TPPCA claims, asserting that its payment of the full appraisal award and all potential interest owed on the claim precludes TPPCA damages as a matter of law. As an initial matter, this is incorrect. "An insured's payment of an appraisal award may defeat a contract claim, but it does not automatically prevent a prompt-payment claim. That is because an insurer may be liable under the [TPPCA] even when it pays in full if that payment was not timely." *Randel v. Travelers Lloyds of Tex. Ins. Co.*, 9 F.4th 264, 268 (5th Cir. 2021) (citing *Barbara Tech. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 822 (Tex. 2019)).

Parsons opposes summary judgment arguing that Liberty did not timely pay the appraisal award because it failed to tender full payment within the 60-day deadline set out in Texas Insurance Code § 542.058 or because it failed to pay the balance of the award within 5 business days as required under Texas Insurance Code § 542.057.

But, as discussed above, Liberty issued Parsons the appraisal check within 5 business days and has shown that there is no genuine dispute as to any material fact as to its liability on Parsons's TPPCA claim based on a violation of Texas Insurance Code § 542.057.

And so the Court need only consider Parsons's allegation that Liberty violated Section 542.058, which provides that the insurer must make full payment within 60 days of receiving all information requested to evaluate the claim. *See* TEX. INS. CODE § 542.058(a). But a defendant-insurer who makes pre-appraisal payments of less than

the amount ultimately owed will not be liable for a prompt payment claim so long as the pre-appraisal payment of the claim made within the 60-day window was for a "reasonable" amount. *Manali Corp. v. Covington Specialty Ins. Co.*, 872 F.3d 255, 259 (5th Cir. 2017).

The Texas Supreme Court recently clarified that a "reasonable" pre-appraisal payment "should roughly correspond to the amount owed on the claim." *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 658 (Tex. 2021). "When it does not, a partial payment mitigates the damage resulting." *Id.*

In defending the reasonableness of its pre-appraisal payment, Liberty points to distinguishing facts between this case and others, noting that it invoked the appraisal process less than a year after Parsons first filed his claim and before Parsons filed this lawsuit, and it pre-paid interest on the claim. But, while these facts may be evidence of Liberty's efforts to operate with Parsons in good faith and resolve his claim quickly, they do not affect what the Texas Supreme Court has stated is the determining factor in deciding whether a pre-appraisal payment was reasonable enough for an insurer to avoid prompt-payment liability for an appraisal award paid after the 60-day deadline: whether the pre-appraisal payment roughly corresponds to the amount ultimately owed.

But how close a pre-appraisal payment must be to the final award to roughly correspond remains ill-defined. *See Randel*, 9 F.4th at 269. In *Hinojos*, the court held that the insurer's pre-appraisal payment of an amount $22,974.75 less and 11.5 times smaller did not sufficiently correspond to the final award. *See* 619 S.W.3d at 654.

Likewise, analyzing an insurer's pre-appraisal payment in light of *Hinojos*, the court in *First United Methodist Church v. Church Mut. Ins. Co.*, No. 13-18-00048-CV, 2021 WL 3776728 (Tex. App. – Corpus Christi Aug. 26, 2021), held that a pre-appraisal payment that was $22,413.86 less and 8 times smaller than the final award did not roughly correspond and was not reasonable. *See id.* at *3.

Here, Liberty's undisputed summary judgment evidence shows that it made $25,863.27 in pre-appraisal payments covering the dwelling and other structures, after subtracting depreciation and the deductible. The final uncontested appraisal award, less depreciation and deductible, was $49,303.58. The pre-appraisal payment is therefore $23,440.21 less than, and approximately 53% of the amount of, the final award. While the relative difference in this case is significantly smaller than in *Hinojos* and *First United Methodist Church*, the question remains whether a pre-appraisal payment of roughly half of what Liberty ultimately owed sufficiently corresponds to the final award to be reasonable.

A helpful way to frame the "roughly corresponds" standard may be to ask if the insurer paid the insured "roughly what it owes them." And experience and common sense dictate that there may be both an absolute and relative dimension to this analysis – that is, paying someone half of what it is really owed might be considered "roughly corresponding" if the true amount is, say, $4,000 and the insurer initially pays $2,000. But, when the numbers involved get larger, saying that paying $50,000 is close enough when what is owed is $100,000 is asking "roughly" to do a lot of work while threatening to strip "corresponds" of any real meaning.

Another judge on this Court very recently wrangled with this same issue and concluded that, in that case, "Liberty has no prompt-payment liability under the TPPCA because the undisputed facts in this case establish that its first pre-appraisal payment of $13,881.47 that was made within the statutory period 'roughly correspond[s]' with the amount it owed on Plaintiff's claim post-appraisal." *Lee v. Liberty Ins. Corp.*, No. 3:19-cv-321-L, 2021 WL 4502323, at *13 (N.D. Tex. Sept. 30, 2021). The Court noted that, there, "Liberty's $13,881.47 payment is approximately 65% of the final amount owed post-appraisal after deducting for the Policy deductible" – which was $21,041.43 – and explained that

> [t]he Texas Supreme Court and the Fifth Circuit have not yet clarified how close a pre-appraisal payment needs to be to "roughly correspond" with the final amount owed for an insurer to avoid liability under the [TPPCA]. After comparing the facts of this case to those in *Randel* and *Hinojos*, however, the court determines that, even if it only considers Liberty's pre-appraisal payment of $13,881.47 that was made within 60-day statutory window, this payment "roughly correspond[s]" with the final amount owed to Plaintiff for his claim under the Policy.
>
> In *Randel*, there was a difference of approximately $185,000 between the appraisal award and what was paid pre-appraisal. *Randel*, 9 F.4th at 268. In *Hinojos*, there was a difference of $15,295 between the appraisal award and pre-appraisal payments. The appraisers valued Hinojos's loss at $38,269.95 on a replacement cost basis. One week later, State Farm "tendered an additional $22,974.75, reflecting payment of the appraisal award net of the earlier payment it made to Hinojos, the deductible, and depreciation." *Hinojos*, 619 S.W.3d at 654. The tendered post-appraisal payment in *Hinojos* represented approximately 60% of the award amount. Here, on other hand, after deducting for the Policy deductible, Liberty paid or tendered approximately 65% in payments pre-appraisal within 60 days after Plaintiff first reported his claim, and it owed only approximately $4,371.91 or approximately 20% of the claim post-appraisal.
>
> Consideration of *Shin* and *Ahmad* cited in Plaintiff's Supplemental Response does not affect the court's determination in this regard. *Shin* is an unpublished one-page opinion in which the Fifth Circuit vacated the judgment and remanded the case to the district court

given the Texas Supreme Court's ruling in *Hinojos*. *Shin*, 848 F. App'x at 174. *Shin* quoted pertinent language in *Hinojos* but did not comment on the merits of the appeal, except to note that "the final appraisal amount ($25,944.94) was 5.6 times greater than the pre-appraisal payment of $4,616.63." *Id.* This large difference alone distinguishes Shin from the facts in this case, even absent any discussion by the Fifth Circuit. *Ahmad* is distinguishable for similar reasons, as it is an unpublished opinion out of the Southern District of Texas and involved an appraisal award of $28,618.21 on a replacement cost basis and a pre-appraisal payment of only $3,446.53. *Ahmad*, 2021 WL 2211799 at *1. Thus, neither is binding precedent and both are distinguishable.

*Id.* at *13.

Here, the undisputed facts in this case establish that Liberty made pre-appraisal payments of $25,863.27, which is approximately 53% of the final amount ($49,303.58) owed post-appraisal. Applying these facts to the Texas Supreme Court's *Hinojos* decision, and looking for guidance and comparisons to these decisions that have also done so even more recently with the facts presented in those cases, the undersigned concludes that Liberty's pre-appraisal payments of only $25,863.27 – amounting to a payment of only a little more than $.50 on every $1.00 owed – does not roughly correspond to the final $49,303.58 amount owed and is thus not reasonable.

Liberty has failed to show that there is no genuine dispute as to any material fact as to its liability on Parsons's TPPCA claim based on a violation of Texas Insurance Code § 542.058, and so the Court should turn to Liberty's arguments for summary judgment on damages on this claim.

### b.  Interest and Attorneys' Fees

The TPPCA provides that an insurer that is liable for an insurance claim and violations of the statute must "pay the holder of the policy, in addition to the amount of the claim, simple interest on the amount of the claim as damages each year at the rate determined on the date of judgment by adding five percent to the interest rate determined under Section 304.003, Finance Code, together with reasonable and necessary attorney's fees." TEX. INS. CODE § 542.060.

But an insurer that violates the TPPCA might nevertheless be entitled to summary judgment on a TPPCA claim if it paid the full amount of interest that the insured could claim under the TPPCA. *See Quibodeaux v. Nautilus Ins. Co.*, 655 F. App'x 984, 989 (5th Cir. 2016) (holding that the district court properly granted summary judgment on TPPCA claim when insurer demonstrated its overpayment on the adjuster's estimates "more than compensated [the insured] for the penalty interest that accrued because of [the insurer's] delay").

Liberty contends that it tendered a $4,992.71 check to Parsons covering all the potential interest owed on the claim. This amount was determined by adding 10% of the unpaid portion of the claim (5% plus the interest rate determined under Texas Finance Code § 304) multiplied by 22 months from June 14, 2019 (the date of Liberty's initial assessment) to April 2, 2021 (the date the umpire signed the final award).

Parsons disputes this calculation, arguing that, "until there is a judgment, it's impossible to pre-pay the penalty interest or attorney's fees. PPOC penalty interest continues to accrue [on the entire amount of the award] until the court enters

-27-

judgment against Liberty Insurance." Dkt. No. 49 at 7. This position does not enjoy support from Texas courts, which, as discussed above, agree that an insurer that violated the TPPCA but has already paid interest at the specified rate may still be entitled to summary judgment. And, where, as here, the insurer violated the TPPCA by failing to make a reasonable pre-appraisal payment, the "partial payment mitigates the damage resulting from a Chapter 542 violation." *Hinojos*, 619 S.W.3d at 658. "Interest accrues only on the unpaid portion of a claim" and "begin[s accruing] on the date the claim was required to be paid." *Id.*; TEX. INS. CODE § 542.060(c).

While Parsons's objections to the calculation method are not well founded, the burden remains on Liberty as the party seeking summary judgment to show that no genuine dispute of fact exists as to whether it has paid Parsons all it owes on the claim. And Liberty's own asserted calculations of the interest payment suggest that it has not. Liberty states that it paid Parsons 22 months of 10% interest on the unpaid balance of the appraisal award. Dkt. No. 60. By those calculations, Liberty should have paid $5,156.84. Liberty also notes that the potential interest owed from June 14, 2019 to April 2, 2021 is in fact 21 months and 19 days but that it gratuitously rounded up the payment to cover an even 22 months – but, even adjusting for the amount owed for 11 fewer days, the Court calculates the interest payment owed at $5,070.89.

Liberty's uncontested summary judgment evidence shows that it tendered an interest payment of only $4,992.71. Because Liberty has not shown that it paid the

full amount of interest owed to Parsons for its delay in paying his claim, Liberty's motion for summary judgment on the TPPCA claim should be denied.

Finally, Liberty argues that, because it paid the full amount of policy benefits and interest owed under the TPPCA, the amount of attorneys' fees that Parsons can claim is zero. But, as Liberty has not showed it paid the full amount of interest owed or – at the least – has not shown there is no genuine dispute of material fact as to whether it has already paid the full amount of interest owed, there remains a dispute as to the amount of attorneys' fees.

The Court should grant Liberty's motion as to Parsons's TCCPA claim based on a violation of Texas Insurance Code § 542.057 but deny the motion as to Parsons's TCCPA claim based on a violation of Texas Insurance Code § 542.058.

## III.    Parsons's Motion for Partial Summary Judgment

### A.    Liability on Parsons's TPPCA Claims

Parsons argues that Liberty violated three provisions of the TPPCA, giving rise to damages.

First, Parsons alleges Liberty violated Texas Insurance Code § 542.056 by "reject[ing] the claim and fail[ing] to notify [Parsons] in writing, including 'the reasons for the rejection.'" Dkt. No. 49. Section 542.056 provides that the insurer must "notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss." TEX. INS. CODE §

542.056(a). And, "[i]f the insurer rejects the claim, the notice required by [542.056(a)] must state the reasons for the rejection." *Id.* § 542.056(c).

But, as already discussed, Parsons has not submitted any evidence that Liberty denied his claim. The payment letters submitted by Liberty show that it confirmed that Parsons's policy covered his loss and that Liberty intended to pay his claim. And the first of these letters is dated June 14, 2019, just three days after Parsons reported the loss. The justifiable inferences to be drawn from this evidence are that Liberty accepted Parsons's claim and notified Parsons of that acceptance within the 15-business day deadline; in other words, Liberty fulfilled the requirements of Section 542.056 and is not liable for damages on this basis. Liberty, and not Parsons, is entitled to judgment as a matter of law on Parsons's TCCPA claim based on a violation of Texas Insurance Code § 542.056.

Second, Parsons claims that Liberty violated Texas Insurance Code § 542.057 by failing to pay the $60,644.42 appraisal award within 5 business days. Dkt. No. 49. As discussed above, there is no genuine dispute that Liberty paid the balance of the appraisal award within 5 business days of notifying Parsons that it would pay the remaining part of his claim, which is what the statute requires. Liberty's uncontested summary judgment evidence shows that it notified Parsons by a letter sent to his attorney on April 12, 2021 that it would pay the appraisal award and enclosed a check for the balance of the award, along with a payment breakdown, with the notification. There is no genuine dispute of material fact that Liberty is not liable for TPPCA damages under Section 542.057, and Liberty, and not Parsons, is entitled to judgment

as a matter of law on Parsons's TCCPA claim based on a violation of Texas Insurance Code § 542.057.

Third, Parsons contends that Liberty is liable for TPPCA damages because it failed to pay Parsons's claim within the 60-day statutory deadline imposed by Texas Insurance Code § 542.058(a), instead paying part of the claim after the appraisal. Section 542.080(a), as explained above, states that, "[e]xcept as otherwise provided, if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060." TEX. INS. CODE § 542.058(a).

Liberty argues that it complied with all deadlines under the TPPCA by timely investigating and making pre-appraisal payments on Parsons's claim. Liberty's evidence does show that, at the component stages of processing Parsons's claim, it followed the deadlines set by the statute. Specifically, Liberty has shown it investigated and accepted Parsons's claim within 15 days of receiving notification of Parsons's loss and made its initial payment within 5 business days of notifying Parsons that it was accepting liability for the claim. And Parsons does not dispute that, each time that he contested Liberty's valuation of his claim after the initial payment, Liberty reinspected or investigated and made additional payments within 5 business days of notifying Parsons of the new estimate.

But, while Liberty's timeliness in this regard precludes liability under other sections of the TPPCA, the Texas Supreme Court has made clear that an "insurer's acceptance and partial payment of the claim within the statutory deadline does not preclude liability for interest on amounts owed but unpaid when the statutory deadline expires." *Hinojos*, 619 S.W.3d at 658. The Court further clarified that "Chapter 542's definition of claim, in the context of sections 542.058 and 542.060, comprises both liability for the loss and the amount owed for that loss." *Id.* And, so, even where the amount that must be paid is not definitively established until after an appraisal, the insurer remains liable for "interest on the amount of the claim that was not promptly paid" even if it made a timely partial payment in good faith believing that amount to be all it owed on the claim *Id.* at 657 (cleaned up).

The parties' evidence shows that Liberty paid the balance of Parsons's claim on April 12, 2021, outside the 60-day statutory deadline. As discussed above, the only way that Liberty may avoid liability is by showing that it made a pre-appraisal payment within the statutory deadline that roughly corresponds with the amount ultimately owed. And, for the reasons fully discussed above, the undisputed evidence shows that Liberty's pre-appraisal payments of $25,863.27 totaled only about half (roughly 53%, rounding up) of the $49,303.58 actually owed post-appraisal, involving a difference of over $23,000. The undersigned concludes that Liberty's pre-appraisal payment of a total only $25,863.27 does not roughly correspond to the final $49,303.58 amount owed. For the reasons already discussed, that payment was not reasonable and cannot serve as a basis for Liberty to avoid TPPCA liability.

And, so, Parsons, and not Liberty, is entitled to judgment as a matter of law on Parsons's TCCPA claim based on a violation of Texas Insurance Code § 542.058, and the Court should turn to Parson's arguments for summary judgment on damages on this claim.

### B.    Interest and Attorneys' Fees

Parsons argues that he is entitled to summary judgment for penalty interest on the amount of the claim and calculates those damages at the time of his filing as $10,882.77.

Liberty responds to the contrary that, to the extent that it owes interest at all, that interest does not exceed the $4,922.71 already paid to Parsons.

Parsons asserts but neither supports nor explains why he is entitled to damages calculated on the appraisal award less the deductible, as opposed to merely the unpaid amount of the claim as Liberty alleges and as the Court instructs in *Hinojos*. Parsons also fails to provide support for his contention that "interest continues to accrue until Judgment is entered against [Liberty]." Dkt. No. 49.

As such, a genuine dispute as to the amount of interest due remains, which precludes summary judgment in Parsons's favor as to an award of interest on his TPPCA claim based on a violation of Texas Insurance Code § 542.058.

Finally, Parsons argues that he is entitled to $64,657.79 in "reasonable and necessary" attorneys' fees. Liberty disputes this, arguing that, under Texas Insurance Code § 542A.007, which governs the award of attorneys' fees, Parsons is entitled to the lesser of:

> (1) the amount of reasonable and necessary attorney's fees supported at trial by sufficient evidence and determined by the trier of fact to have been incurred by the claimant in bringing the action;
>
> (2) the amount of attorney's fees that may be awarded to the claimant under other applicable law; or
>
> (3) the amount calculated by:
>
>> (A) dividing the amount to be awarded in the judgment to the claimant for the claimant's claim under the insurance policy for damage to or loss of covered property by the amount alleged to be owed on the claim for that damage or loss in a notice given under this chapter; and
>>
>> (B) multiplying the amount calculated under Paragraph (A) by the total amount of reasonable and necessary attorney's fees supported at trial by sufficient evidence and determined by the trier of fact to have been incurred by the claimant in bringing the action.

TEX. INS. CODE § 542A.007(a).

Pointing to Section 542A.007(a)(3(A), Liberty argues that it has already paid Parsons the full amount of policy benefits and interest owed on the claim, which means that any award of attorney's fees would amount to zero dollars.

Because a genuine dispute of fact remains as to what if any remaining interest Liberty owes on Parsons's TPPCA claim based on a violation of Section 542.058(a), the Court should deny Parsons's motion as to both interest and attorneys' fees on his TPPCA claim based on a violation of Texas Insurance Code § 542.058.

## Recommendation

For the reasons and to the extent explained above, the Court should grant Defendant Liberty Insurance Corporation's Motion for Summary Judgment [Dkt. No. 23], and grant judgment as a matter of law in Liberty's favor, on Plaintiff Sean Parsons's claims for (1) breach of contract; (2) unfair or deceptive trade practices; (3)

breach of the common law duty of good faith and fair dealing; (4) breach of express and implied warranty; (5) insurance fraud; and (6) violations of the Texas Prompt Payment of Claims Act based on alleged violations of Texas Insurance Code §§ 542.056 and 542.057 and deny Liberty's Motion for Summary Judgment [Dkt. No. 23] as to Parsons's claim for a violation of the Texas Prompt Payment of Claims Act based on an alleged violation of Texas Insurance Code § 542.058.

And the Court should grant Parsons's Motion for Partial Summary Judgment [Dkt. No. 48], and grant judgment as a matter of law in Parsons's favor, on Liberty's liability for Parsons's claim for a violation of the Texas Prompt Payment of Claims Act based on an alleged violation of Texas Insurance Code § 542.058 but deny Parsons' Motion for Partial Summary Judgment as to his claim for violations of the Texas Prompt Payment of Claims Act based on alleged violations of Texas Insurance Code §§ 542.056 and 542.057 and – because genuine disputes as to material facts remain, precluding summary judgment in favor of either party – as to the matters of interest and attorneys' fees on Parsons's claim for violations of the Texas Prompt Payment of Claims Act claim based on a violation of Texas Insurance Code § 542.058.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

        DATED: October 8, 2021

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE